SCOTT O. MERCER (3834)
RYAN B. HANCEY (9101)
KESLER & RUST
68 South Main Street, 2nd Floor
Salt Lake City, Utah  84101
Telephone:  (801) 532-8000
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH T. SORENSON, an individual, <br><br> Plaintiff, <br><br> v. <br><br> JOSE ARTURO RIFFO, an individual, ALAN C. MONSON, an individual, CRYPTO CORPORATION, INC., a Utah corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation, and DIPPARDO FINANCIAL & GUARANTY GROUP, INC., a Utah corporation, <br><br> Defendants. <br> ------------------------------------------------------- <br><br> CRYPTO CORPORATION, INC., a Utah Corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation, and DIPPARDO FINANCIAL & GUARANTY GROUP, INC., a Utah corporation, <br> Counterclaim Plaintiffs, <br> v. <br><br> JOSEPH T. SORENSON, an individual, <br><br> Counterclaim Defendant. | **ANSWER, AMENDED COUNTERCLAIM, THIRD-PARTY COMPLAINT, AND JURY DEMAND** <br><br><br><br><br> Civil No. 2:06-CV-749 <br> Judge Ted Stewart <br><br> (Jury Requested) |

CRYPTO CORPORATION, INC., a Utah
Corporation, and GLOBAL DATABASE
INFORMATION SYSTEMS, INC., a Utah
corporation,

            Third-party Plaintiffs,

v.

KATHLEEN SORESON, an individual,
BEVERLEY SORENSON, an individual,
JAMES L. SORENSON, an individual, and
DOE individuals or entities I-XX,

            Third-party Defendants.

_____Defendants Jose Arturo Riffo ("Riffo"), Alan C. Monson ("Monson"), Crypto Corporation,

Inc. ("Crypto"), Global Database Information Systems, Inc. ("Global"), and Dippardo Financial &

Guaranty Group, Inc. ("Dippardo") (collectively "Defendants") hereby respond to the allegations

contained in the complaint of Plaintiff Joseph T. Sorenson ("Plaintiff") as follows:

      1.     Defendants admit the statements of parties contained in ¶¶ 1-6 of Plaintiff's

complaint.

      2.     Defendants deny the allegations contained in ¶¶ 7-9 of Plaintiff's complaint.

      3.     Defendants are without information sufficient to admit or deny the allegations

regarding Wynn Westmoreland ("Westmoreland") contained in ¶ 10 of Plaintiff's complaint and

therefore deny the same.  Defendants deny all remaining allegations contained in ¶ 10 of Plaintiff's

complaint.

4.      Defendants deny the allegations contained in ¶ 11 of Plaintiff's complaint.

5.      Defendants are without information sufficient to admit or deny the allegations contained in ¶ 12 of Plaintiff's complaint and therefore deny the same.

6.      Defendants deny the allegations contained in ¶ 13 of Plaintiff's complaint.

7.      With respect to ¶ 14 of Plaintiff's complaint, Defendants admit that Riffo is Italian and deny all remaining allegations contained therein.

8.      With respect to ¶ 15 of Plaintiff's complaint, Defendants admit that Riffo brought non-confidential materials pertaining to Defendants' DNA technology and deny the remaining allegations contained therein.

9.      Defendants deny the allegations contained in ¶¶ 16-21 of Plaintiff's complaint, including all subparts of ¶ 21.

10.     With respect to ¶ 22 of Plaintiff's complaint, Defendants admit that Riffo was an incorporator and initial director of Crypto and Global, but deny all remaining allegations contained therein.

11.     With respect to ¶ 23 of Plaintiff's complaint, Defendants admit that Riffo was one of the initial incorporators and initial directors of Dippardo, but deny all remaining allegations contained therein.

12.     Defendants deny the allegations contained in ¶ 24 of Plaintiff's complaint.

2

13.     With respect to ¶ 25 of Plaintiff's complaint, Defendants admit that Riffo's full name is Jose Arturo Riffo and that Riffo is a Chilean citizen.  Defendants further admit that Riffo pled guilty to mail fraud but affirmatively allege that Riffo only served eighteen months in prison. Defendants are without information sufficient to admit or deny the hearsay allegations regarding the alleged statements of Riffo's attorney and therefore deny the same.  Defendants deny all remaining allegations contained therein.

14.     With respect to ¶ 26 of Plaintiff's complaint, Defendants admit that Riffo represented himself as a quantum physicist and nuclear engineer.  Defendants also admit that a September 16, 2005 meeting was held at the Sorenson corporate offices but deny that Monson arranged said meeting.  Defendants deny the balance of the allegations contained in ¶ 26 of Plaintiff's complaint.

15.     With respect to ¶ 27 of Plaintiff's complaint, Defendants admit that Riffo has a degree in journalism, as well as other degrees, but Riffo specifically denies that he ever represented to Plaintiff that he had obtained a degree in journalism and denies the balance of the allegations contained therein.

16.     Defendants are without information sufficient to admit or deny the allegations regarding Westmoreland contained in ¶ 28 of Plaintiff's complaint and therefore deny the same. Defendants deny the balance of the allegations contained in ¶ 28 of Plaintiff's complaint.

3

17. With respect to ¶ 29 of Plaintiff's complaint, Defendants admit that a meeting was held at the Embassy Suites Hotel prior to October 7, 2005, but deny the balance of the allegations contained therein.

18. With respect to ¶ 30 of Plaintiff's complaint, Defendants admit that Riffo and another family member have invested in DNA technology and that several engineers have worked on said technology, and deny the remaining allegations contained therein.

19. Defendants deny the allegations contained in ¶ 31 of Plaintiff's complaint.

20. With respect to ¶ 32 of Plaintiff's complaint, Defendants admit that an "Executive Summary" was provided to Plaintiff. Defendants further admit that they had a group of engineers working on the technology. Defendants deny that the "Executive Summary" was provided by Riffo and that the same was furnished to Plaintiff prior to October 7, 2005. Defendants deny the balance of the allegations contained in ¶ 32 of Plaintiff's complaint.

21. Defendants deny the allegations contained in ¶¶ 33-34 of Plaintiff's complaint.

22. Defendants deny the allegations contained in ¶ 35 of Plaintiff's complaint.

23. With respect to ¶ 36 of Plaintiff's complaint, Defendants admit that Riffo signed the Business Asset Purchase Agreement on behalf of Crypto and that Monson signed on behalf of Global. Defendants affirmatively allege that the document speaks for itself and deny Plaintiff's characterization of said document. Defendants deny the balance of the allegations contained in ¶ 36 of Plaintiff's complaint.

4

24.     With respect to ¶ 37 of Plaintiff's complaint, Defendants deny that any such verbal representations were made and affirmatively allege that the Business Asset Purchase Agreement speaks for itself.  Defendants deny the balance of the allegations contained in ¶ 37 of Plaintiff's complaint.

25.     With respect to ¶ 38 of Plaintiff's complaint, Defendants admit that Riffo signed the referenced Addendum on behalf of Crypto and that Monson signed on behalf of Global.  Defendants affirmatively allege that the document speaks for itself and deny Plaintiff's characterization of said document.  Defendants deny the balance of the allegations contained in ¶ 38 of Plaintiff's complaint.

26.     With respect to ¶ 39 of Plaintiff's complaint, Defendants admit that a confidentiality agreement was referenced in the Business Asset Purchase Agreement and that the same was presented to Plaintiff by Monson.  Defendants deny the remaining allegations contained in ¶ 39 of Plaintiff's complaint and affirmatively allege that two separate, fully executed confidentiality agreements exist and that the agreement referenced by Plaintiff was not attached as an exhibit to the Business Asset Purchase Agreement.

27.     Defendants deny the allegations contained in ¶¶ 40-41 of Plaintiff's complaint and incorporate herein the affirmative allegation set forth in Defendants' response to ¶ 39 of Plaintiff's complaint.

28.     Defendants deny the allegations contained in ¶¶ 42-46 of Plaintiff's complaint.

29.     In response to ¶ 47 of Plaintiff's complaint, Defendants reallege and incorporate by reference the responses contained in ¶¶ 1-28 herein.

30.     Paragraphs 48-49 of Plaintiff's complaint contain legal conclusions and do not require a response from Defendants.

31.     Defendants deny the allegations contained in ¶¶ 50-54 of Plaintiff's complaint.

32.     With respect to ¶ 55 of Plaintiff's complaint, Defendants are without information sufficient to admit or deny allegations concerning whether Plaintiff relied on certain representations and therefore deny the same, while affirmatively alleging that any such reliance was not reasonable. Defendants deny the balance of the allegations contained in ¶ 55 of Plaintiff's complaint.

33.     Defendants deny the allegations contained in ¶¶ 56-57 of Plaintiff's complaint.

34.     In response to ¶ 58 of Plaintiff's complaint, Defendants reallege and incorporate by reference the responses contained in ¶¶ 1-33 herein.

35.     Paragraph 59 of Plaintiff's complaint contains a legal conclusion and does not require a response from Defendants.

36.     Defendants deny the allegations contained in ¶¶ 60-67 of Plaintiff's complaint.\

37.     In response to ¶ 68 of Plaintiff's complaint, Defendants reallege and incorporate by reference the responses contained in ¶¶ 1-36 herein.

38.     Paragraph 69 of Plaintiff's complaint contains a legal conclusion and does not require a response from Defendants.

39.     Defendants deny the allegations contained in ¶¶ 70-74 of Plaintiff's complaint.

40.     In response to ¶ 75 of Plaintiff's complaint, Defendants reallege and incorporate by reference the responses contained in ¶¶ 1-39 herein.

41.     Defendants deny the allegations contained in ¶¶ 76-83 of Plaintiff's complaint.

42.     In response to ¶ 84 of Plaintiff's complaint, Defendants reallege and incorporate by reference the responses contained in ¶¶ 1-41 herein.

43.     Defendants deny the allegations contained in ¶¶ 85-92 of Plaintiff's complaint.

44.     In response to ¶ 93 of Plaintiff's complaint, Defendants reallege and incorporate by reference the responses contained in ¶¶ 1-43 herein.

45.     Defendants deny the allegations contained in ¶¶ 94-98 of Plaintiff's complaint.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's complaint fails to state a cause of action against Defendants.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Plaintiff's unclean hands.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver, laches, and estoppel.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by assumption of risk.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by a failure or lack of consideration.

## SIXTH AFFIRMATIVE DEFENSE

Any damages claimed by Plaintiff are more than offset by Defendants' claims against Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Plaintiff's fraudulent acts.

## EIGHTH AFFIRMATIVE DEFENSE

Defendants specifically reserve the right to plead other affirmative defenses as they become known in the course of these proceedings.  Defendants further reserve the right to cross claim, counterclaim, and bring third party complaints where appropriate.

**WHEREFORE**, Defendants pray for the following:

1.      That Plaintiff's Complaint be dismissed with prejudice, no cause of action;

2.      For Defendants' attorney fees and costs pursuant to the terms of the parties' agreement; and

3.      For such other relief as the Court may deem proper and fit.

## AMENDED COUNTERCLAIM

Crypto Corporation, Inc. ("CCI"), Global Database Information Systems, Inc. ("GDIS"), and Dippardo Financial & Guaranty Group, Inc. ("Dippardo") (collectively "Counterclaim Plaintiffs" or

the "Counterclaim Plaintiff entities") hereby counterclaim against Joseph T. Sorenson ("Joseph Sorenson") and for cause of action allege as follows:

1.      CCI is a Utah corporation with its principal place of business in Salt Lake County, State of Utah.

2.      GDIS is a Utah corporation with its principal place of business in Salt Lake County, State of Utah.

3.      Dippardo is a Utah corporation with its principal place of business in Salt Lake County, State of Utah.

4.      Joseph Sorenson is an individual residing in Salt Lake County, State of Utah.

5.      Jurisdiction and venue are proper before this Court because the parties entered into a contract in Salt Lake County, State of Utah and because said contract provides that all actions arising out of the same be brought in Salt Lake County, State of Utah.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

6.      On or about October 7, 2005, CCI and GDIS, collectively as seller, and Joseph Sorenson, as buyer, entered into a Business Asset Purchase Agreement ("Agreement"), a true and correct copy of which is attached hereto as Exhibit "A".

7.      Pursuant to the Agreement, Joseph Sorenson was to pay Counterclaim Plaintiffs the total sum of  $100,000,000.00 within 120 days of execution of said Agreement, or by February 3, 2006.

8.      Pursuant to the Agreement, while Joseph Sorenson was acquiring the $100,000,000.00 necessary to fulfill his obligation, Joseph Sorenson was to furnish Counterclaim Plaintiffs collateral in the form of a cash payment of $2,500,000.00 and $10,000,000.00 worth of publicly traded stock.

9.      Pursuant to the Agreement, and in addition to his $100,000,000.00 payment, Joseph Sorenson was to use his influence and connections to raise an additional $100,000,000.00 for the benefit and use of Counterclaim Plaintiffs.

10.     Pursuant to the Agreement, and in consideration of Joseph Sorenson's payment of $100,000,000.00 and efforts to raise an additional $100,000,000.00, Counterclaim Plaintiffs were to transfer a forty percent (40%) ownership interest in the Counterclaim Plaintiff entities, including company assets and intellectual property rights, to Joseph Sorenson.

11.     The parties further agreed that, in consideration of Joseph Sorenson's contractual obligations, Counterclaim Plaintiffs would appoint Joseph Sorenson as president and chief executive officer of the Counterclaim Plaintiff entities and appoint Beverley Sorenson and Kathleen Sorenson as directors of the Counterclaim Plaintiff entities.

10

12.     Upon execution of the Agreement, Joseph Sorenson made a cash payment of $2,500,000.00 to Counterclaim Plaintiffs as required by the Agreement.

13.     Joseph Sorenson failed to transfer $10,000,000.00 in publicly traded stock to Counterclaim Plaintiffs as provided by the Agreement.

14.     In reliance on the Agreement and Joseph Sorenson's obligations thereunder, Counterclaim Plaintiffs transferred a 40% ownership interest in the Counterclaim Plaintiff entities, including all company assets and intellectual property, to Joseph Sorenson.  Counterclaim Plaintiffs also appointed Joseph Sorenson as president and chief executive officer of the Counterclaim Plaintiff entities and Beverley Sorenson and Kathleen Sorenson as directors of the Counterclaim Plaintiff entities.

15.     Joseph Sorenson accepted the 40% ownership interest in the Counterclaim Plaintiff entities and his appointment as president and chief executive officer and, in fact, served in those capacities for Counterclaim Plaintiffs for a period of approximately two months.

16.     On or about December 8, 2005, Joseph Sorenson tendered his resignation as president and chief executive officer of Counterclaim Plaintiffs and asked for a return of his $2,500,000.00 cash payment.

17.     At or about the same time, Joseph Sorenson indicated that he would not honor his remaining contractual obligations, including the payment of $100,000,000.00 to Counterclaim

Plaintiffs, the raising of an additional $100,000,000.00 on behalf of Counterclaim Plaintiffs, and further service as and officer and director of Counterclaim Plaintiff.

18.     Based on the above, Joseph Sorenson breached the parties' Agreement and, in doing so, caused Counterclaim Plaintiffs to suffer substantial injury and damages.

19.     By his own admission, Joseph Sorenson breached the Agreement and resigned as an officer of Counterclaim Plaintiffs based on pressure he was receiving from his father, James L. Sorenson.  See attached Exhibit "B".

20.     As a result of his breach, Joseph Sorenson is liable to Counterclaim Plaintiffs in the amount of $197,500,000.00.

<u>SECOND CAUSE OF ACTION</u>
**Breach of Confidentiality & Non-Disclosure Agreement**

21.     Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1-20 of their Counterclaim as though set forth verbatim herein.

22.     On or about October 7, 2005, Joseph Sorenson executed a Confidentiality and Non-Disclosure Agreement (hereinafter "Confidentiality Agreement"), wherein he agreed not to share or disclose certain documentation and intellectual property owned by Counterclaim Plaintiffs ("Proprietary Information") to any third party whatsoever.  A true and correct copy of the Confidentiality Agreement is contained within the attached Exhibit "A".

23.     The Confidentiality Agreement prohibits Joseph Sorenson from copying or reproducing any of the Proprietary Information.

12

24.     The Confidentiality Agreement prohibits Joseph Sorenson from using the Proprietary Information for his own purposes or any other purpose not related to the negotiation and purchase of an ownership interest in Counterclaim Plaintiffs, as set forth in the Agreement.

25.     The Confidentiality Agreement provides that all Proprietary Information furnished to Joseph Sorenson will be promptly returned within five (5) business days following such request by Counterclaim Plaintiffs.

26.     In reliance on the Confidentiality Agreement, CCI and GDIS furnished Joseph Sorenson copies of the Proprietary Information.

27.     When Joseph Sorenson breached the Agreement and resigned as officer of the Counterclaim Plaintiff entities, Counterclaim Plaintiffs demanded the immediate return of all Proprietary Information in Joseph Sorenson's possession.

28.     Joseph Sorenson has breached the Confidentiality Agreement in the following ways:

a.      To date, Joseph Sorenson has failed and refused to timely return the Proprietary Information despite Counterclaim Plaintiffs' demands to return the same;

b.      Upon information and belief, Joseph Sorenson shared the Proprietary Information with and/or furnished the Proprietary Information to various third parties, including his father, James L. Sorenson and the Doe defendants I-XX;

c.   Upon information and belief, Joseph Sorenson copied and/or reproduced the Proprietary Information for his personal use and for the purpose of sharing the Proprietary Information with third parties; and

d.   Upon information and belief, Joseph Sorenson used the Proprietary Information for his own purposes not related to the negotiation and purchase of an ownership interest in the Counterclaim Plaintiff entities.

29   The damages sustained by Counterclaim Plaintiffs as a result of Joseph Sorenson's various breaches of the Confidentiality Agreement were difficult to predict and are difficult, if not impossible, to ascertain by any satisfactory or known rule.

30.   Pursuant to the Confidentiality Agreement, Joseph Sorenson is liable to Counterclaim Plaintiffs for his various breaches thereof in the amount of $12,500.00 per day as liquidated damages from the date of such breaches until such time as Joseph Sorenson turns over all of Counterclaim Plaintiffs' property, including copies of reproductions thereof.

## THIRD CAUSE OF ACTION
### (Fraud)

31.   Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 30 of their Counterclaim as though set forth verbatim herein.

32.   Joseph Sorenson had access to and obtained the Proprietary Information from Counterclaim Plaintiffs.

14

33.     Joseph Sorenson knew of the sensitive nature of the material and, on October 7, 2005, executed the Confidentiality Agreement, wherein he agreed not to share or disclose the Proprietary Information with any third party.

34.     Prior to and at the time he executed the Confidentiality Agreement, Joseph Sorenson represented to Counterclaim Plaintiffs that he would not share or disclose the Proprietary Information with any third party for any reason whatsoever.

35.     At the time Joseph Sorenson made such representation to Counterclaim Plaintiffs, Joseph Sorenson knew that it was false.   Nevertheless, Joseph Sorenson made the false representation for the purpose of inducing Counterclaim Plaintiffs to furnish the Proprietary Information to Joseph Sorenson so that he could in turn furnish the Proprietary Information to third parties, including his father, entities controlled by Joseph Sorenson and/or his father, and other entities Joseph Sorenson and/or his father later purchased interests in, for the purpose of furthering other business deals.

36.     Believing Joseph Sorenson's representation that he would not disseminate the Proprietary Information to be true, Counterclaim Plaintiffs relied on such representation and furnished the Proprietary Information to Joseph Sorenson.

37.     Upon receiving access to the Proprietary Information, Joseph Sorenson shared the same with various third parties, including his father, James L. Sorenson, entities controlled by Joseph

Sorenson and/or his father, and other entities Joseph Sorenson and/or his father later purchased interests in, including Doe defendants I-XX.

38.　　Joseph Sorenson and his father used the Proprietary Information for their benefit in facilitating and furthering other business deals.

39.　　Joseph Sorenson's fraud and Counterclaim Plaintiffs' reasonable reliance thereon has caused Counterclaim Plaintiffs to suffer substantial damages.

### FOURTH CAUSE OF ACTION
**(Conversion)**

40.　　Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 39 of their Counterclaim as though set forth verbatim herein.

41.　　To date, Joseph Sorenson has failed and/or refused to return the Proprietary Information, and all copies and reproductions thereof, to Counterclaim Plaintiffs.

42.　　Joseph Sorenson has thus willfully and knowingly exercised dominion and control over the Proprietary Information, knowing that it is the property of Counterclaim Plaintiffs.

43.　　Joseph Sorenson's possession and use of the Proprietary Information is inconsistent with Counterclaim Plaintiffs' ownership rights and has caused Counterclaim Plaintiffs to suffer substantial injury and damages.

## FIFTH CAUSE OF ACTION
### (Civil Theft)

44.     Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 43 of their Counterclaim as though set forth verbatim herein.

45.     In acting as alleged herein, Joseph Sorenson obtained and/or exercised unauthorized control over property belonging to Counterclaim Plaintiffs with the purpose to deprive them thereof.

46.     In acting as alleged herein, Joseph Sorenson acted with criminal intent to deprive Counterclaim Plaintiffs and/or cause harm and injury to Counterclaim Plaintiffs.

## SIXTH CAUSE OF ACTION
### (Civil Conspiracy)

47.     Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 46 of their Counterclaim as though set forth verbatim herein.

48.     In acting as alleged herein, Joseph Sorenson, together with James L. Sorenson, Beverley Sorenson, Kathleen Sorenson, and all or some of the Doe defendants I-XX, agreed to a conspiracy to achieve unlawful purposes, namely, to misappropriate the Proprietary Information from Counterclaim Plaintiffs for use in unrelated business deals.

49.     In so conspiring, Joseph Sorenson acted wilfully and maliciously and in disregard of Counterclaim Plaintiffs' ownership rights.

50.     As a direct and proximate result of the civil conspiracy, Counterclaim Plaintiffs have suffered substantial damages.

17

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

51.     Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 50 of their Counterclaim as though set forth verbatim herein.

52.     As an officer and director of the Counterclaim Plaintiff entities, Joseph Sorenson owed a fiduciary duty to protect the interests and assets of Counterclaim Plaintiffs and specifically to protect the Proprietary Information.

53.     By acting as alleged herein, including the misappropriation the Proprietary Information and use of it for his own personal benefit, Joseph Sorenson breached his fiduciary duty to Counterclaim Plaintiffs.

54.     As a direct and proximate result of Joseph Sorenson's breach of fiduciary duty, Counterclaim Plaintiffs have incurred significant injury and damages.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

55.     Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 54 of their Counterclaim as though set forth verbatim herein.

56.     Joseph Sorenson has seen and has intimate knowledge of the Proprietary Information and of Counterclaim Plaintiffs' business plan and has appropriated the same for his own gain.

57.     Counterclaim Plaintiffs' conveyance of the Proprietary Information to Joseph Sorenson conferred a tangible benefit upon Joseph Sorenson.

58.     Counterclaim Plaintiffs did not act as volunteers or intermeddlers in conducting themselves as alleged herein and expected compensation for the benefits they conferred upon Joseph Sorenson in the form of Joseph Sorenson's adherence to the terms of the Agreement and the Confidentiality Agreement.

59.     Joseph Sorenson knew or should have known that Counterclaim Plaintiffs expected to be compensated for the benefits furnished to Joseph Sorenson.

60.     To permit Joseph Sorenson to retain the benefits he received from Counterclaim Plaintiffs without compensating Counterclaim Plaintiffs therefore would result in the unjust enrichment of Joseph Sorenson at the expense of Counterclaim Plaintiffs, which unjust enrichment should not be countenanced by a court of equity.

61.     As the rightful owner of the Proprietary Information, Counterclaim Plaintiffs are entitled to a writ of replevin requiring an immediate return of the Proprietary Information, and all copies and reproductions thereof, to Counterclaim Plaintiffs' possession.

## NINTH CAUSE OF ACTION
### (Bad Check)

62.     Counterclaim Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 61 of their Counterclaim as though set forth verbatim herein.

63.     In or about November 2005, Dippardo extended a loan to Joseph Sorenson in the amount of $100,000.00 ("Loan").

64.     On or about April 27, 2006, Joseph Sorenson signed and delivered a check to Dippardo, a true and correct copy which is attached hereto as Exhibit "C" and by this reference made a part hereof.

65.     Said check was in the amount of $100,000.00 and was signed and issued by Joseph Sorenson for the purpose of repaying the Loan.

66.     The Loan constituted a valid and legally binding obligation on the part of Joseph Sorenson.

67.     After delivering the check to Dippardo, Joseph Sorenson stopped payment on the check with the intent to defraud Dippardo.

68.     On or about February 28, 2007, and pursuant to Utah Code Ann. § 7-15-1 *et seq*., Dippardo mailed to Joseph Sorenson, by certified mail, a written notice of intent to file civil action. That notice informed Joseph Sorenson that if he did not pay the principal check amount, together with a $20.00 service charge, within fifteen (15) days, then he would be liable for the principal check amount, the service charge, and $20.00 in collection costs.  The notice also provided that, if Joseph Sorenson did not pay the principal amount, service charge, and collection costs within thirty (30) days, then Dippardo would be entitled to file civil action against Joseph Sorenson. A true and correct copy of said notice is attached hereto as Exhibit "D" and by this reference made a part hereof.

69.     More than thirty days have passed since Dippardo mailed said notice to Joseph Sorenson, and Joseph Sorenson has failed and/or refused to pay Dippardo the principal check amount of $100,000.00, the $20.00 service charge, and the $20.00 in collection costs.

70.     In addition to the principal check amount, service charges, and collection costs as described above, Utah Code Ann. § 7-15-1 *et seq*. provides for damages against the maker of a bad check up to triple the check amount, but not to exceed the check amount plus $500.00.

71.     Pursuant to the provisions of Utah Code Ann. § 7-15-1 *et seq*., Joseph Sorenson is liable to Dippardo for the following amounts: the principal amount of $100,000.00, service charge of $20.00; collection costs of $20.00, and damages in the amount of $100,500.00, for a total of $200,540.00, together with interest on the principal check amount at the highest legal rate from April 28, 2006 until paid, and together with Dippardo's court costs and attorney fees incurred herein.

**WHEREFORE**, Counterclaim Plaintiffs pray for relief against Joseph Sorenson as follows:

1.     For a monetary judgment in the amount of Counterclaim Plaintiffs' actual damages to be established at trial, together with damages as provided for in Utah Code Ann. § 7-15-1 *et seq*.;

2.     For a writ of replevin ordering the sheriff to seize the Proprietary Information and all copies and reproductions thereof in Joseph Sorenson's possession and return the same to Counterclaim Plaintiffs;

3.     For Counterclaim Plaintiffs' costs and attorney fees incurred in bringing this action pursuant to the terms of the Agreement;

4.       For an award of punitive damages against Joseph Sorenson; and

5.       For such further relief as the Court deems just and proper in the premises.

### THIRD-PARTY COMPLAINT

Pursuant to Federal Rule of Civil Procedure 14, Third-party Plaintiffs Crypto Corporation, Inc. ("CCI") and Global Database Information Systems, Inc. ("GDIS") (collectively "Third-party Plaintiffs") hereby complain of third-party defendants Kathleen Sorenson, Beverley Sorenson, James L. Sorenson, and Doe defendants I-XX and allege as follows:

1.       CCI is a Utah corporation with its principal place of business in Salt Lake County, State of Utah.

2.       GDIS is a Utah corporation with its principal place of business in Salt Lake County, State of Utah.

3.       James L. Sorenson is an individual residing in Salt Lake County, State of Utah.

4.       Kathleen Sorenson is an individual residing in Salt Lake County, State of Utah.

5.       Beverley Sorenson is an individual residing in Salt Lake County, State of Utah.

6.       Doe defendants I-XX are individuals, partnerships, corporations, or other entities who engaged in wrongful actions as alleged herein but whose names and identities have not yet been ascertained by Third-party Plaintiffs.  Pursuant to Utah R. Civ. P. 9(a)(2), Third-party Plaintiffs pray for leave to amend this Third-party Complaint when the true names and identities of any such Doe defendants are ascertained.

7.     Jurisdiction and venue are proper before this Court because the third-party defendants' conduct alleged herein occurred in Salt Lake County, State of Utah.

## FIRST CAUSE OF ACTION
**(Intentional Interference with Prospective Economic Relations)**

8.     Third-party Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 7 of their Third-party Complaint as though set forth verbatim herein.

9.     James L. Sorenson and/or Doe defendants I-XX knew that Joseph Sorenson had entered into an agreement with Third-party Plaintiffs whereby Joseph Sorenson was to pay $100,000,000.00 in exchange for acquiring an interest in the Third-party Plaintiff companies, together with certain proprietary information intellectual property, and business plans (collectively "Proprietary Information").

10.     James L. Sorenson and/or Doe defendants I-XX also knew that Joseph Sorenson had executed a Confidentiality and Non-Disclosure Agreement ("Confidentiality Agreement"), wherein he agreed not to share or disclose the Proprietary Information to any third party.

11.     Notwithstanding the above, James L. Sorenson and/or Doe defendants I-XX obtained and reviewed the Proprietary Information with the intent to appropriate the knowledge for themselves and further related business interests, to the detriment of Third-party Plaintiffs.

12.     James L. Sorenson and/or Doe defendants I-XX used their familial and business relationships with Joseph Sorenson to obtain the Proprietary Information for their own personal use

23

and benefit and with the intent to further their subsequent acquisition and/or involvement with other entities, including a competitor of Third-party Plaintiffs known as MediConnect Global.

13.     James L. Sorenson and/or Doe defendants I-XX appropriated the Proprietary Information with the intent to convince Joseph Sorenson to withdraw from his agreement with Third-party Plaintiffs and join James L. Sorenson and/or Doe defendants in their venture with MediConnect Global and other entities, using the Proprietary Information for their use and benefit.

14.     In acting as alleged herein, James L. Sorenson and/or Doe defendants I-XX intended to injure Third-party Plaintiffs.

15.     James L. Sorenson and Doe defendants I-XX thus intentionally interfered with the contractual relationship between Third-party Plaintiffs and Joseph Sorenson by way of improper means and/or for an improper purpose.

## SECOND CAUSE OF ACTION
### (Conversion)

16.     Third-party Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 15 of their Third-party Complaint as though set forth verbatim herein.

17.     James L. Sorenson and/or Doe defendants I-XX have failed and refused to return the Proprietary Information, and all copies and reproductions thereof, to Third-party Plaintiffs despite demand for the same.

18.     James L. Sorenson and/or Doe defendants I-XX have thus willfully and knowingly exercised dominion and control over the Proprietary Information, knowing that it is the property of Third-party Plaintiffs.

19.     James L. Sorenson's and/or Doe defendants I-XXs' possession and use of the Proprietary Information is inconsistent with Third-party Plaintiffs' ownership rights and has caused Third-party Plaintiffs to suffer substantial injury and damages.

**THIRD CAUSE OF ACTION**
**(Civil Theft)**

20.     Third-party Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 19 of their Third-party Complaint as though set forth verbatim herein.

21.     In acting as alleged herein, James L. Sorenson and/or Doe defendants I-XX obtained and/or exercised control over property belonging to Third-party Plaintiffs with the purpose to deprive them thereof.

**FOURTH CAUSE OF ACTION**
**(Misappropriation of Trade Secrets)**

22.     Third-party Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 21 of their Third-party Complaint as though set forth verbatim herein.

23.     James L. Sorenson and/or Doe defendants I-XX acquired the Proprietary Information, which contained trade secrets and other sensitive information, from Joseph Sorenson, knowing that in doing so Joseph Sorenson was violating a written confidentiality and non-disclosure agreement.

25

24.     James L. Sorenson and/or Doe defendants I-XX knew that their acquisition of the Proprietary Information was accomplished through improper means.

25.     James L. Sorenson's and/or Doe defendants I-XXs' misappropriation of the Proprietary Information has caused Third-party Plaintiffs to suffer significant injury and damages.

26.     Pursuant to Utah Code Ann. §13-24-1 *et seq*., Third-party Plaintiffs are entitled to recover their damages, together with an award of their costs and attorney fees in litigating this matter.

## FIFTH CAUSE OF ACTION
### (Civil Conspiracy)

27.     Third-party Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 26 of their Third-party Complaint as though set forth verbatim herein.

28.     Defendants Kathleen Sorenson and Beverley Sorenson accepted appointments as officers and/or directors of the Defendant companies for the purpose of misappropriating the Proprietary Information or, in the alternative, to assist James Sorenson and Joseph Sorenson in misappropriating the same.

29.     In addition, Joseph Sorenson, together with James L. Sorenson and all or some of the Doe defendants I-XX, conspired to obtain the Proprietary Information from Third-party Plaintiffs by way of deceit and subterfuge in order to further their subsequent acquisition and/or involvement with other entities, including a competitor of Third-party Plaintiffs known as MediConnect Global.

30.     In acting as alleged herein, James L. Sorenson, Joseph Sorenson, Beverley Sorenson, Kathleen Sorenson, and Doe defendants I-XX agreed to conspire to achieve unlawful purposes, namely, to misappropriate the Proprietary Information from Third-party Plaintiffs.

31.     In doing so, the parties to the civil conspiracy acted wilfully and maliciously.

32.     As a direct and proximate result of the civil conspiracy, Third-party Plaintiffs have suffered substantial damages.

### SIXTH CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

33.     Third-party Plaintiffs incorporate by reference the allegations contained in ¶¶ 1 through 32 of their Third-party Complaint as though set forth verbatim herein.

34.     As officers and/or directors of the Third-party Plaintiff entities, Beverley Sorenson and Kathleen Sorenson owed a fiduciary duty to protect the interests and assets of Third-party Plaintiffs and specifically to protect the Proprietary Information.

35.     By acting as alleged herein, including their conspiring to misappropriate the Proprietary Information for their own personal benefit, Beverley Sorenson and Kathleen Sorenson breached their fiduciary duty to Third-party Plaintiffs.

36.     As a direct and proximate result of Beverley and Kathleen Sorenson's breach of fiduciary duty, Third-party Plaintiffs have incurred significant injury and damages.

**WHEREFORE**, Third-party Plaintiffs pray for the following relief against Third-party Defendants:

1.     For a monetary judgment in the amount of Third-party Plaintiffs' actual damages to be established at trial;

2.     For a writ of replevin ordering the sheriff to seize the Proprietary Information and all copies and reproductions thereof in any of the Third-party Defendants' possession and return the same to Third-party Plaintiffs;

3.     For Third-party Plaintiffs' costs and attorney fees incurred in bringing this action pursuant to the terms of the Agreement;

4.     For an award of punitive damages against Third-party Defendants; and

5.     For such further relief as the Court deems just and proper in the premises.

### JURY DEMAND

Defendants, Counterclaim Plaintiffs, and Third-party Plaintiffs hereby request a jury in this case respecting all claims brought in Plaintiff's complaint and this answer, counterclaim, and third-party complaint.

**DATED** this 9th day of May 2007.

KESLER & RUST

/s/ Ryan B. Hancey

_____

Scott O. Mercer
Ryan B. Hancey
*Attorneys for Defendants*

28

## <u>CERTIFICATE OF MAILING</u>

I hereby certify that I caused to be delivered by the method indicated below a true and correct

copy of the foregoing **ANSWER, AMENDED COUNTERCLAIM, THIRD-PARTY**

**COMPLAINT, AND JURY DEMAND**, postage prepaid, this 9th day of May 2007 to:


____    FEDERAL EXPRESS                    Randall Mackey
____    U.S. MAIL                          Mackey Price Thompson & Ostler
____    HAND DELIVERY                      American Plaza II
____    TELEFAX TRANSMISSION               57 West 200 South, Suite 350
_x__    ELECTRONIC MAIL                    Salt Lake City, Utah 84101-3663

/s/ Ryan B. Hancey
_____
F:\DATA\Rhanc\LITIG\anscclaim3.riffo.wpd