IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH T. SORENSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSE ARTURO RIFFO, an individual, ALAN C. MONSON, an individual, CRYPTO CORPORATION, INC., a Utah corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation, and DIPPARDO FINANCIAL & GUARANTY GROUP, INC., a Utah corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ATTENDANCE AT DEPOSITION and DENYING MOVANT'S SECOND MOTION TO QUASH DEPOSITION SUBPOENA**<br><br>Civil No. 2:06-CV-749  TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |
| CRYPTO CORPORATION, INC., a Utah corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation, and DIPPARDO FINANCIAL & GUARANTY GROUP, INC., a Utah corporation,<br>                    Counterclaim Plaintiffs,<br>v.<br><br>JOSEPH T. SORENSON, an individual,<br>                    Counterclaim Defendant. | |
| CRYPTO CORPORATION, INC., a Utah corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation,<br>                    Third-party Plaintiffs,<br>v.<br>KATHLEEN SORENSON, an individual, BEVERLEY SORENSON, an individual, James Lee Sorenson, Personal Representative of the Estate of James LeVoy Sorenson., and DOE individuals or entities I-XX,<br>                    Third-party Defendants. | |

1

Plaintiff's Motion to Compel Attendance at Deposition[1] and Movant's Second Motion to Quash Deposition Subpoena[2] are before the Court. The Court has carefully reviewed the motions, memoranda, relevant legal authorities and other materials submitted by the parties. For the reasons set forth below, Plaintiff's Motion to Compel Attendance is GRANTED and Movant's Second Motion to Quash Deposition Subpoena is DENIED.

## INTRODUCTION

Plaintiff Joseph T. Sorenson (Sorenson) alleges that Defendants misrepresented information regarding themselves, their companies, and their DNA technology to fraudulently induce Sorenson to invest over $2.5 million in Defendants' fraudulent enterprises Crypto Corporation (Crypto) and Global Database Information Systems, Inc. (Glodis).[3] Sorenson's claims include federal and state securities fraud, negligent misrepresentation, common law fraud, and civil conspiracy.[4]

Among the alleged misrepresentations upon which Sorenson relied before signing the Business Asset Purchase Agreement and investing over $2.5 million in Crypto and Glodis was a statement written by lead Defendant J. Arturo Riffo (Riffo) in a letter dated September 12, 2005 (September 2005 Letter).[5] This statement reads, "Glodis and Crypto Corporation have several offers in writing on the table from well known corporations and distinguished American businessmen with serious intentions to join us."[6] During discovery, Plaintiff requested

---

[1] Plaintiff's Motion to Compel Attendance at Deposition, docket no. 71, filed February 28, 2008.
[2] Movant's Second Motion to Quash Deposition Subpoena, docket no. 63, filed February 14, 2008.
[3] Complaint at 11-19, docket no. 1, filed September 6, 2006.
[4] *Id.*
[5] September 12, 2005 Letter from Riffo to Sorenson, filed February 28, 2008, attached as Exhibit A to Affidavit of Gifford Price, docket no. 74.
[6] *Id.*

documentation showing the "several offers in writing on the table" that Riffo referred to in his September 2005 Letter.[7]

## Quest for Evidence of Offers

Defendants failed to produce any such evidence during discovery. Plaintiff's counsel wrote a letter to Defendants' counsel on September 24, 2007, referencing Riffo's September 2005 Letter. Plaintiff's counsel pointed out the lack of any evidence to support the claim that offers were on the table. "Said offers did not appear to be among the documents produced as we would like a copy of all of them."[8] In response, Defendants' counsel wrote a letter to Plaintiff's counsel dated October 18, 2007, asserting that "[w]hile there is documentation responsive to this request, my clients will not produce the same on the basis that it is protected by the attorney-client privilege. That is, the document(s) that have been located are from Riffo's attorney."[9]

Plaintiff's counsel subsequently asked Defendants for the information required by Rule 26(b)(5) regarding the documents protected by the attorney-client privilege.[10] Defendants' counsel responded that the document supporting the assertion that there were "several offers in writing on the table from well known corporations and distinguished American businessmen with serious intentions to joint us" was a letter (May 2005 Letter) written to Defendants by Jeffery R. Price (J. Price), their prior legal counsel who was retained to "assist in negotiations with potential investors of Crypto and Glodis."[11] After receiving this terse explanation, Plaintiff's counsel requested additional information about the allegedly privileged letter

---

[7] *Id.*
[8] September 24, 2007 Letter from Plaintiff's Counsel to Defendants' Counsel, filed February 28, 2008, attached as Exhibit B to Affidavit of Gifford Price, docket no. 74.
[9] October 18, 2007 Letter from Defendants' Counsel to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit D to Affidavit of Gifford Price, docket no. 74.
[10] October 22, 2007 Letter from Plaintiff's Counsel to Defendants' Counsel, filed February 28, 2008, attached as Exhibit E to Affidavit of Gifford Price, docket no. 74.
[11] October 23, 2007 Letter from Defendants' Counsel to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit F to Affidavit of Gifford Price, docket no. 74.

3

including the "date of counsel's letter, by whom signed, to whom addressed with the address(es), to whom provided or sent and the number of pages."[12]

### **Waiver of the Privilege and Production of the Letter**

In a letter dated November 26, 2007, Defendants' counsel delivered the May 2005 Letter with this explanation:

> On November 20, 2007, Arturo Riffo indicated his desire to waive the attorney-client privilege as it pertains to the referenced document. A copy is therefore enclosed herein. Please note that Riffo's attorney, Jeffery R. Price, has indicated that he will only speak to your office about the subjects referenced in the enclosed document on the record.[13]

The May 2005 Letter is dated May 19, 2005. In the May 2005 Letter, Movant J. Price told Riffo, "In accordance with our management schedule, I would like to confirm that I have met with several distinguished corporations and individuals who have demonstrated serious interest in developing a financial joint venture in connection with developing our technology projects."[14] The letter continued, "Some are interested in the Global Database Information System, Inc. Others are interested in Crypto Corporation. There are still others, including venture capital firms which are interested in both. Consequently, as a legal matter, I recommend that you do not sign any agreements, nor sell any interest in the companies at this time."[15]

When Riffo was questioned in his deposition about the "distinguished corporations and individuals" interested in investing in Crypto and Glodis, Riffo stated that he did "not really" have any discussions with J. Price regarding such possibilities and could only name "Cozwell"

---

[12] October 26, 2007 Letter from Plaintiff's Counsel to Defendants' Counsel, filed February 28, 2008, attached as Exhibit G to Affidavit of Gifford Price, docket no. 74; *see also* October 29, 2007 Letter from Plaintiff's Counsel to Defendants' Counsel, filed February 28, 2008, attached as Exhibit H to Affidavit of Gifford Price, docket no. 74.
[13] November 26, 2007 Letter from Defendants' Counsel to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit I to Affidavit of Gifford Price, docket no. 74.
[14] *Id.*; *see also* May 19, 2005 Letter from J. Price to Riffo, filed February 14, 2008, attached as Exhibit 2 to Memorandum in Support re Second Motion to Quash Deposition Subpoena, docket no. 64.
[15] *Id.*

4

and "Quaquatch" as potential investors.[16] Riffo further asserted that he did not remember the venture capital firms that J. Price referred to in the May 2005 Letter (although he stated that J. Price mentioned some to him in verbal discussions) or know the names of any of the distinguished individuals who were referred to in that letter.[17]

### Efforts to Depose J. Price

Counsel for Plaintiff then sought to depose J. Price regarding the "distinguished corporations and individuals" that he referenced in the May 2005 Letter.[18] In response, J. Price sent a letter to Plaintiff's counsel acknowledging the receipt of phone messages from both the Plaintiff's counsel and the Defendants' counsel in which they requested a list of favorable dates for J. Price to be deposed.[19] But J. Price stated that he would be unwilling to "schedule or attend a deposition in this case for any purpose" and had no information to offer that "could reasonably be calculated to lead to the discovery of admissible evidence" due to his claim that his communications with Riffo were protected under the attorney-client privilege.[20]

Plaintiff's counsel made several further attempts to arrange a deposition with J. Price before J. Price was sent a subpoena dated December 28, 2007.[21] The subpoena set a deposition for January 17, 2008. J. Price failed to return an acceptance of service for the subpoena, so Plaintiff's counsel sent two letters to J. Price calling his attention to the subpoena prior to the

---

[16] Excerpts from the Deposition of Riffo, pg. 61-64, filed February 28, 2008, attached as Exhibit Deposition Pages to the Affidavit of Gifford Price, docket no. 74.
[17] *Id.*
[18] *See* December 5, 2007 Letter from Plaintiff's Counsel to Defendants' Counsel, filed February 28, 2008, attached as Exhibit J to the Affidavit of Gifford Price, docket no. 74; December 6, 2007 Letter from Plaintiff's Counsel to Defendants' Counsel, filed February 28, 2008, attached as Exhibit K to the Affidavit of Gifford Price, docket no. 74.
[19] December 10, 2007 Letter from J. Price to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit L to the Affidavit of Gifford Price, docket no. 74.
[20] *Id.*
[21] *See* December 11, 2007 Letter from Plaintiff's Counsel to Defendants' Counsel, filed February 28, 2008, attached as Exhibit M to the Affidavit of Gifford Price, docket no. 74; December 13, 2007 Letter from J. Price to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit N to the Affidavit of Gifford Price, docket no. 74; December 13, 2007 Letter from Plaintiff's Counsel to J. Price, filed February 28, 2008, attached as Exhibit O to the Affidavit of Gifford Price, docket no. 74.

date of the scheduled deposition.[22] On January 16, 2008, J. Price filed a Motion to Quash Deposition Subpoena under Rules 45(3)(A)(iii) and 37 of the Federal Rules of Civil Procedure, claiming that the Plaintiff sought to discover information that is protected and immune from discovery under the Attorney-client privilege for the purposes of harassing and intimidating Riffo and Alan C. Monson (Monson).[23]

Plaintiff objected to Movant J. Price's motion and moved to strike the motion because that there was no attached memorandum and because the subpoena had not been formally served.[24] J. Price then withdrew his first Motion to Quash Deposition Subpoena.[25] After a second Deposition Subpoena was served on J. Price on January 25, 2008 (setting a deposition for February 21, 2008), J. Price filed a second Motion to Quash Deposition Subpoena with an attached memorandum on February 14, 2008.[26]

## Current Motion to Quash

In his renewed Motion to Quash Deposition Subpoena, J. Price declares that he is not the attorney of record for any party named in this case but that he does have an ongoing attorney-client relationship with Riffo and Monson.[27] J. Price further stated that he is presently engaged in representing Riffo's daughters and wife in an action against Sorenson for improper threats,

---

[22] *See* December 28, 2007 Letter from Plaintiff's Counsel to J. Price, filed February 28, 2008, attached as Exhibi t P to the Affidavit of Gifford Price, docket no. 74; January 9, 2008 Letter from Plaintiff's Counsel to J. Price, filed February 28, 2008, attached as Exhibit Q to the Affidavit of Gifford Price, docket no. 74; January 16, 2008 Letter from Plaintiff's Counsel to J. Price, filed February 28, 2008, attached as Exhibit R to the Affidavit of Gifford Price, docket no. 74.
[23] Motion to Quash Deposition, docket no. 53, filed January 16, 2008.
[24] Plaintiff's Motion to Strike Motion to Quash Deposition, docket no. 56, filed January 24, 2008; *see also* Plaintiff's Memorandum in Support re Plaintiff's Motion to Strike Motion to Quash Deposition Subpoena, docket no. 57, filed January 24, 2008. Under the Rules of Practice of the District Court of Utah, DUCivR 7-1(b) (1), "[E]ach motion must be accompanied by a memorandum of supporting authorities that is filed or presented with the motion."
[25] Reply to Response to Motion re Plaintiff's Motion to Strike Motion to Quash Deposition Subpoena, Notice of Withdrawal of Motion to Quash, docket no. 62, filed February 14, 2008.
[26] Second Motion to Quash Deposition Subpoena, docket no. 63, filed February 14, 2008; Memorandum in support re Second Motion to Quash Deposition Subpoena, docket no. 64, filed February 14, 2008.
[27] Memorandum in support re Second Motion to Quash Deposition Subpoena, docket no. 64, filed February 14, 2008.

coercion and intimidation and anticipates representing the Board of Directors of Glodis and Crypto in a lawsuit against Sorenson.[28] In his Memorandum, J. Price writes that he was not involved with the transaction that is the subject of this lawsuit, has never met Sorenson, and has not been given any direction, instruction or permission to waive the attorney-client privilege whatsoever in regards to his privileged communications with Riffo.[29]

On February 18, 2008, J. Price sent a letter to Plaintiff's counsel. J. Price stated that he would not be appearing to testify at the deposition that was scheduled for February 21, 2008, unless instructed to do so by the court.[30] Plaintiff replied that unless there was a court order to the contrary, the court reporter would be present at the February 21, 2008 deposition.[31] J. Price did not show up at the scheduled deposition, and on February 28, 2008, Plaintiff subsequently filed the Motion to Compel Attendance at Deposition.[32] In supporting memoranda that accompany this Motion, Plaintiff states that the deposition of J. Price was sought for relevant and appropriate purposes, and that the attorney-client privilege in regards to subjects mentioned in the May 2005 letter was waived by the client Riffo through Riffo's voluntary disclosure of the letter and his responses to deposition questions regarding the content of the letter.[33]

---

[28] *Id.* at 4-5.
[29] *Id.* at 6-7.
[30] February 18, 2008 Letter from J. Price to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit S to the Affidavit of Gifford Price, docket no. 74.
[31] February 20. 2008 Letter from Plaintiff's Counsel to J. Price, filed February 28, 2008, attached as Exhibit T to the Affidavit of Gifford Price, docket no. 74.
[32] Motion to Compel Attendance at Deposition, docket no. 71, filed February 28, 2008; *see also* Record of Nonappearance, filed February 28, 2008, attached as Exhibit Record of Nonappearance to the Affidavit of Gifford Price, docket no. 74.
[33] Memorandum in Support re Motion to Compel Attendance at Deposition, docket no. 72, filed February 28, 2008; Memorandum in Opposition re Second Motion to Quash Deposition Subpoena, docket no. 73, filed February 28, 2008.

## DISCUSSION

### Waiver of the Attorney-Client Privilege

J. Price asserts that his deposition subpoena should be quashed because he has an ongoing attorney-client relationship with J. Riffo and his family; does not have any permission to waive the attorney-client privilege on the part of J. Riffo in regards to information pertaining to this case; and does not have any relevant discoverable information that is outside the scope of the protected attorney-client communications.[34]

The attorney-client privilege is a right that belongs to the client and may be waived by the client himself or by an attorney acting on his behalf.[35] Once a *client* has waived the attorney-client privilege with regards to a particular communication, such as voluntarily disclosing a privileged letter or willfully testifying about a privileged conversation without invoking the privilege, then the *attorney* cannot later claim that the privilege applies to the disclosed information.[36]

Defendants waived the attorney-client privilege regarding the contents of the May 2005 Letter that was sent from J. Price to Riffo. The express waiver was made in Defendants' counsel's November 26, 2007 letter to Plaintiff's counsel: "On November 20, 2007, Arturo Riffo indicated his desire to waive the attorney-client privilege as it pertains to the referenced document. A copy is therefore enclosed herein.."[37]

Riffo acted consistently with this waiver of the attorney-client privilege when he answered questions relating to the subjects referenced in the May 2005 Letter during his

---

[34] Affidavit of J. Price, docket no. 65, filed February 14, 2008.
[35] Utah R. Evid. 504(c); Utah R. of Prof'l Conduct 1.6 (2005).
[36] *Burlage v. Haudenshield*, 42 F.R.D. 397 (N.D. Iowa 1967); *Daniels v. Hadley Memorial Hospital*, 68 F.R.D. 583 (D.D.C. 1975).
[37] November 26, 2007 Letter from Defendants' Counsel to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit I to Affidavit of Gifford Price, docket no. 74.

deposition.[38] Riffo voluntarily responded to questions regarding the "distinguished corporations" that were mentioned in the May 2005 Letter, and admitted that he could not remember the names of any of the individuals or venture capital firms that had allegedly expressed an interest in developing a financial joint venture with his companies.[39] During his deposition, Riffo did not claim the attorney-client privilege when questioned about the subjects referenced in the May 2005 Letter.[40]

Defendants do not object to deposing J. Price regarding the subjects referenced in the May 2005 Letter, and Defendants' counsel further left a telephone message jointly with Plaintiff's counsel requesting J. Price to provide dates to be deposed.[41] In addition, Defendants have not attempted to reassert the attorney-client privilege for the information revealed in the May 2005 Letter following their voluntary disclosure of the letter to Plaintiff's counsel. Only J. Price contends that the attorney-client privilege was not waived.[42] The decision is not his to make, however, and has already been made by Riffo, the holder of the privilege.[43]

### Scope of the Waiver

In his Reply to Response to Motion re Second Motion to Quash Deposition, J. Price argued that the attorney-client privilege was never waived because the disclosure of the "general topic" of the privileged communication does not constitute a waiver of the privilege.[44] While this principle applies to the specific advice that J. Price gave to Riffo regarding what he should do

---

[38] Excerpts from the Deposition of Riffo, pg. 61-64, filed February 28, 2008, attached as Exhibit Deposition Pages to the Affidavit of Gifford Price, docket no. 74.
[39] *Id.*
[40] *Id.*
[41] December 10, 2007 Letter from J. Price to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit L to the Affidavit of Gifford Price, docket no. 74.
[42] Reply to Response to Motion re Second Motion to Quash Deposition, docket no. 76, filed March 10, 2008.
[43] *See Hickman v. Taylor*, 329 U.S. 495, 508 Shepardize (1947).
[44] *Id.* J. Price cited two Kansas cases to support this proposition: *IMC Chemicals, Inc. v. Niro, Inc.*, 2000 U.S. Dist. LEXIS 22850 Shepardize (D. Kan. 2000); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 U.S. Dist. LEXIS 54370 Shepardize (D. Kan. 2007).

9

concerning the offers from the referenced "distinguished corporations and individuals," it does not protect against the disclosure of the names of such corporations, individuals and venture capital firms. That *information* may have been communicated to Riffo in confidence – at the time for business reasons – but those identities are not confidential because the identities were received by J. Price's contact with those third-parties, which is outside the scope of any privilege. The attorney-client privilege does not protect information gathered in discussions with third parties.[45]

The purpose of deposing J. Price is to determine whether there were in fact "several offers in writing on the table," as Riffo claimed that there were in his September 2005 letter to Sorenson, which Sorenson relied on prior to signing the Business Asset Purchase Agreement and investing over $2.5 million in Crypto and Glodis.[46] Therefore, through Riffo's voluntary disclosure of the May 2005 Letter and responses to questions in his deposition concerning the distinguished corporations, individuals and venture capital firms, the attorney-client privilege regarding the subjects referenced in the May 19, 2005 letter was waived.

## **J. Price is Subject to Deposition**

Attorneys are not immune from depositions when they possess discoverable information that is relevant to the case.[47] "An attorney, even an attorney for a party to the suit, is subject to being deposed. Courts do not favor thwarting a deposition. Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition."[48]

---

[45] *Hickman*, 329 U.S. at 508 Shepardize.
[46] September 12, 2005 Letter from Riffo to Sorenson, filed February 28, 2008, attached as Exhibit A to Affidavit of Gifford Price, docket no. 74.
[47] *Hickman*, 329 U.S. at 511 Shepardize.
[48] *Simmons Foods, Inc. v. Willis,* 191 F.R.D. 625, 630 (D.Kan.2000); *see also Epling v. UCB Films, Inc.*, 204 F.R.D 691 Shepardize (D. Kan. 2001).

10

In *Shelton v. American Motors Corp.* the 8th Circuit Court limited depositions of opposing counsel to situations where the party seeking the deposition has shown that (1) there is no other way to obtain the information; (2) the desired information is both relevant and nonprivileged; and (3) the information is critical to the preparation of the case.[49] The Tenth Circuit Court has agreed with the *Shelton* criteria in its determination of whether opposing counsel should be deposed.[50] The Tenth Circuit Court is silent, however, on the issue of whether the same requirements should be met when deposing *prior* counsel to a party. Nevertheless, whether or not the *Shelton* requirements apply to the case at hand, Plaintiff has shown the necessity to depose J. Price regarding the subjects referenced in the now disclosed May 2005 Letter.

The first element of the *Shelton* criteria is fulfilled because no other means exist to obtain evidence that there were "several offers in writing on the table," as stated in the September 2005 letter.[51] During discovery, Defendants failed to produce any evidence proving such offers. When pressed for documentation supporting the assertion in the September 2005 Letter, Defendants produced the May 2005 Letter.[52] But this letter is vague, conclusory and does not name any specific individuals, corporations or venture capital firms.[53] Plaintiff's counsel questioned Riffo during his deposition regarding the specific names of the distinguished individuals, corporations and venture capital firms, but Riffo did not remember any interested entities except for the

---

[49] *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 Shepardize (8th Cir. 1986).
[50] *Boughton v. Cotter Corp.* 65 F.3d 823, 828 -831 Shepardize (10th Cir. 1995).
[51] September 12, 2005 Letter from Riffo to Sorenson, filed February 28, 2008, attached as Exhibit A to Affidavit of Gifford Price, docket no. 74.
[52] November 26, 2007 Letter from Defendants' Counsel to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit I to Affidavit of Gifford Price, docket no. 74; *see also* May 19, 2005 Letter from J. Price to Riffo, filed February 14, 2008, attached as Exhibit 2 to Memorandum in Support re Second Motion to Quash Deposition Subpoena, docket no. 64.
[53] *Id.*

corporations "Cozwell" and "Quaguatch."[54] Therefore, deposing J. Price is the only way to verify that such offers existed and that the September 2005 Letter did not contain misrepresentations that were made to persuade Sorenson to invest in Crypto and Glodis.

The second element of *Shelton* requires that the information sought from a party's attorney in a deposition to be both relevant and nonprivileged. Under Federal Rules of Evidence, Rule 401 Shepardize, "relevant evidence" is broadly defined as information that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[55] In his Complaint, Plaintiff filed claims of federal and state securities fraud, negligent misrepresentation, common law fraud, and civil conspiracy against Defendants.[56] Many of these claims for relief rely upon alleged misrepresentations that were made to the Plaintiff by Defendants.[57]

One of the most central statements made to Plaintiff was in the September 2005 Letter.[58] The existence of any such offers is central to Plaintiff's claims for relief in this suit. Any evidence that would assist in verifying this statement is relevant. Since there has not yet been any significant evidence presented to support this statement, J. Price's testimony regarding the names of the individuals, corporations and venture capital firms and the details surrounding such offers is very relevant.

---

[54] Excerpts from the Deposition of Riffo, pg. 61-64, filed February 28, 2008, attached as Exhibit Deposition Pages to the Affidavit of Gifford Price, docket no. 74.
[55] Fed. R. Evid. 401. Shepardize
[56] Complaint at 11-19, docket no. 1, filed September 6, 2006.
[57] *Id.*
[58] September 12, 2005 Letter from Riffo to Sorenson, attached as Exhibit A to Affidavit of Gifford Prices, docket no. 74, filed February 28, 2008.

In addition to being relevant, the information sought from J. Price is nonprivileged. As discussed above, the attorney-client privilege was waived by Riffo, the client.[59] Therefore, the information sought from J. Price fulfills the second of the *Shelton* criteria because it is both relevant and nonprivileged.

The third element of *Shelton* requires the information to be critical to the preparation of the case.[60] Without the ability to confirm the veracity of the Defendants' statements that were made to the Plaintiff prior to his signing the Business Asset Purchase Agreement and investing over $2.5 million in Crypto and Glodis, the finder of fact would be unable to determine whether or not the statements that Plaintiff relied upon in making his investment were in fact false. J. Price's testimony is critical to the preparation of this case due to the lack of any other evidence regarding the existence of offers or the identity of other interested parties.[61]

### Limiting Instructions for the Required Deposition of J. Price

Since the primary purpose of the deposition of J. Price is to determine the validity of Defendant Riffo's statement to the Plaintiff regarding the "several offers in writing on the table," J. Price's deposition shall be limited in its inquiry to information for which the attorney-client privilege has been waived. In Riffo's deposition, Riffo was asked (1) to name the "distinguished corporations and individuals" that had expressed an interest in his technology; (2) whether or not he had engaged in discussions with J. Price about the "distinguished corporations and individuals" that were referenced in the May 2005 Letter; (3) to list the venture capital firms that were mentioned in the May 2005 Letter; (4)  to state the reasons for which J. Price told him not

---

[59] November 26, 2007 Letter from Defendants' Counsel to Plaintiff's Counsel, filed February 28, 2008, attached as Exhibit I to Affidavit of Gifford Price, docket no. 74; Excerpts from the Deposition of Riffo, pg. 61-64, filed February 28, 2008, attached as Exhibit Deposition Pages to the Affidavit of Gifford Price, docket no. 74.
[60] *Shelton*, 805 F.2d at 1327.
[61] September 12, 2005 Letter from Riffo to Sorenson, attached as Exhibit A to Affidavit of Gifford Prices, docket no. 74, filed February 28, 2008.

to sign any agreements or sell any interest in the companies; (5) whether or not he had sold an interest in the companies; (5) whether or not he had another opinion telling him to sell the companies; and (6) whether or not he could remember any other documents or indications showing a change in the advice that he received regarding not selling the companies.[62]

Similarly, J. Price may be questioned about any of the above subjects and any communication that he had with the individuals, corporations and venture capital firms referenced in the May 2005 Letter.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion to Compel Attendance[63] is GRANTED and that Movant's Second Motion to Quash Deposition Subpoena[64] is DENIED. No expenses are awarded to either party on these motions.

DATED this 16th date of June 2008.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[62] Excerpts from the Deposition of Riffo, pg. 61-64, filed February 28, 2008, attached as Exhibit Deposition Pages to the Affidavit of Gifford Price, docket no. 74.
[63] Plaintiff's Motion Compel Attendance at Deposition, docket no. 71, filed February 28, 2008.
[64] Movant's Second Motion to Quash Deposition Subpoena, docket no. 63, filed February 14, 2008.