IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSEPH T. SORENSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOSE ARTURO RIFFO, an individual, ALAN C. MONSON, an individual, CRYPTO CORPORATION, INC., a Utah corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation, and DIPPARDO FINANCIAL & GUARANTY GROUP, INC., a Utah corporation,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DISCOVERY, GRANTING IN PART DEFENDANTS' MOTION FOR PROTECTIVE ORDER, and GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE SURREPLY MEMORANDUM**<br><br>Civil No. 2:06-CV-749  TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge David Nuffer |
| CRYPTO CORPORATION, INC., a Utah corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation, and DIPPARDO FINANCIAL & GUARANTY GROUP, INC., a Utah corporation,<br>Counterclaim Plaintiffs,<br>v.<br><br>JOSEPH T. SORENSON, an individual,<br>Counterclaim Defendant. | |
| CRYPTO CORPORATION, INC., a Utah corporation, GLOBAL DATABASE INFORMATION SYSTEMS, INC., a Utah corporation,<br>Third-party Plaintiffs,<br>v.<br>KATHLEEN SORENSON, an individual, BEVERLEY SORENSON, an individual, James Lee Sorenson, Personal Representative of the Estate of James LeVoy Sorenson., and DOE individuals or entities I-XX,<br>Third-party Defendants. | |

Plaintiff's Motion to Compel Discovery[1], Defendants' Motion for Protective Order[2], and Defendants' Motion for Leave to File Surreply Memorandum[3] are before the Court. The Court has carefully reviewed the motions, memoranda, relevant legal authorities and other materials submitted by the parties. For the reasons set forth below, Plaintiff's Motion to Compel Discovery is GRANTED; Defendants' Motion for Protective Order is GRANTED IN PART; and Defendants' Motion for Leave to File Surreply Memorandum is GRANTED.

## INTRODUCTION

Plaintiff Joseph Sorenson (Sorenson) alleges that Defendants misrepresented their DNA technology, which induced him to invest over $2.5 million in their fraudulent companies.[4] Prior to signing the Business Asset Purchase Agreement and investing in Crypto Corporation, Inc. (Crypto) and Global Database Information Systems, Inc. (Glodis), Sorenson was given an "Executive Summary" stating that the companies' products included a DNAMicroChip Card, Crypto Secure Channel Network, GlodisCrypto Card, GlodisCryptoDNA Card, Glodis Algorithm and the GlodisCryptoMicroChip.[5] This Executive Summary further alleged that "computer scientists, physicists, mathematicians, computer software engineers, computer software developers, genetic engineers and physicians with expertise in human DNA and stem cell research have invested their expertise, knowledge, prestige, and over $50,000,000 to develop the first six products."[6] According to Sorenson, Defendants Jose Arturo Riffo (Riffo) and Alan

---

[1] Plaintiff's Motion to Compel Discovery, docket no. 83, filed March 20, 2008.
[2] Defendants' Motion for Protective Order, docket no. 106, filed May 13, 2008.
[3] Defendants' Motion for Leave to File Surreply Memorandum, docket no. 93, filed April 15, 2008.
[4] Complaint at 11-19, docket no. 1, filed September 2, 2006.
[5] Executive Summary, attached as Exhibit B to Affidavit of Gifford Price (Price Aff.), docket no. 85, filed March 20, 2008.
[6] *Id.*

C. Monson (Monson) told him in a meeting on September 8, 2005, that the Crypto card and the GlodisCryptoDNA card were developed and ready for mass production.[7]

### Quest for Evidence of Purported Technology

Plaintiff submitted his First Request for Production of Documents on July 22, 2007.[8] In this request, Plaintiff sought all writings, drawings, renditions, physical objects, computer generated information, research papers, agreements, and other materials pertaining to Defendants' purported technology.[9]

Prior to Defendants serving their initial disclosures, the parties entered into a Stipulated Protective Order on July 31, 2007.[10] In this Stipulated Protective Order, parties agreed to designate information concerning trade secrets, business dealings and finances, and sensitive personal information as either "Confidential" or "Highly Confidential," and to only allow specified individuals to have access to such information.[11] At least one party representative has access to all information. This Order further stated that it was without prejudice to the right of any party to oppose production of any information under the Federal Rules of Civil Procedure, and that it could be amended by agreement of the parties or by a Court order.[12]

On August 1, 2007, Defendants served their initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure.[13] Defendants indicated that they had provided "a copy, or description by category and location, of all discoverable documents, data compilations and

---

[7] Complaint at 3-4.
[8] Memorandum in Support of Plaintiff's Motion to Compel Discovery at iii, docket no. 84, filed March 20, 2008.
[9] *Id.* at iv.
[10] Stipulated Protective Order, docket no. 36, filed July 31, 2007.
[11] *Id.* at 2.
[12] *Id.* at 8.
[13] Defendants' Rule 26 Initial Disclosures attached as Exhibit E to Price Aff..

tangible things in the possession, custody or control of the respective parties and which supports their claims or defenses."[14] Defendants further stated:

> All such documents not previously produced hereto shall be made available for inspection and/or copying at the offices of Kesler & Rust subject to the terms of the stipulated protected order filed on or about July 25, 2007. Certain objects, such as prototypes and card readers, cannot be duplicated and shall only be made available for observation at the offices of Kesler & Rust.[15]

Following the receipt of Defendants' Initial Disclosure, Plaintiff's counsel went to the offices of Kesler & Rust in August 2007 to inspect the documents and objects that had not been previously produced.[16] According to Plaintiff's counsel, no physical objects were included in the produced materials that were available for examination at the offices of Kesler & Rust.[17]

Plaintiff's counsel continued to seek discovery of the physical objects referenced that relate to Defendants' purported technology and wrote a letter on September 21, 2007, asking Defendants' counsel for any additional materials and a written response to Plaintiff's request for production.[18] In Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents, dated September 26, 2007, Defendants stated that they "produced each and every responsive document in their possession to Plaintiff by way of their Rule 26 initial disclosures. Defendants will supplement this response if and when additional responsive documents are located."[19]

### Additional Materials Mentioned in Defendants' Deposition

Defendant Riffo was deposed by Plaintiff's counsel on January 8, 2008.[20] During his deposition, Riffo asserted that he had a "physical card for continue [sic] to developing [sic] the

---

[14] *Id.* at 4.
[15] *Id.*
[16] Price Aff. ¶ 7.
[17] *Id.* ¶ 8.
[18] September 21, 2007 letter from Plaintiff's Counsel to Defendants' Counsel attached as Exhibit F to Price Aff.
[19] Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents attached as Exhibit F to Price Aff.
[20] Price Aff. ¶10.

4

completed product;" a "platform of the mother board ready to go;" documents concerning Dippardo minutes; a power of attorney; a loan with Wynn Westmoreland; software paperwork; a technology assignment from California Capital to Glodis and Crypto; and additional writings pertaining to the CryptoDNA Project.[21] While Riffo stated in his deposition that he would not produce the prototype card or motherboard because they were "trade secrets," Defendants had not previously disclosed that they had such objects or even made mention of additional confidential materials.[22]

In a letter to Defendants' counsel dated January 15, 2008, Plaintiff's counsel requested production of the writings and physical materials relating to the purported technology that were referenced in Riffo's deposition.[23] Plaintiff's counsel sent a second letter on January 21, 2008, to Defendants' counsel that reiterated Plaintiff's request for additional production and provided specific page numbers that referenced the statements in Riffo's deposition in which he discussed additional discovery materials.[24] These included Dippardo minutes, a power of attorney, loan documents relative to Wynn Westmoreland, software paperwork, an incomplete prototype of the DNA card, technology assignment from California Capital to Global and Crypto, writings pertaining to CryptoDNA Project, a card prototype, and the platform of the motherboard.[25] On January 31, 2008, counsel of each party exchanged emails regarding the materials referenced in Riffo's deposition.[26] In these emails, Defendants' counsel wrote that Riffo had not yet been able to locate all of the documents that he referenced, such as diplomas, and that the "certain formulas

---

[21] January 21, 2008 Letter from Plaintiff's Counsel to Defendants' Counsel attached as Exhibit H to Price Aff.; Riffo Dep. 165:8-14, 166:24-25 (Jan. 18, 2008), attached as Exhibit A to Memorandum in Opposition to Plaintiff's Motion to Compel Discovery.
[22] Riffo Dep. 165:8-14, 166:24-25.
[23] January 15, 2008 Letter from Plaintiff's Counsel to Defendants' Counsel attached as Exhibit G to Price Aff..
[24] January 21, 2008 Letter from Plaintiff's Counsel to Defendants' Counsel.
[25] *Id.*
[26] January 31, 2008 Emails between Plaintiff's Counsel and Defendants' Counsel, filed March 20, 2008, attached as Errata I to Price Aff..

and a prototype of [Riffo's] card" are highly confidential trade secrets that would cause "irreparable damage" if produced.[27] In reply, Plaintiff's counsel referenced the Stipulated Protective Order already in place and wrote that production of all mentioned materials is expected because no objections were made to discovery in Defendants' responses to Plaintiff's requests for production.[28] On February 4, 2008 and February 25, 2008, Plaintiff's counsel wrote additional letters to Defendants' counsel requesting responses to the further discovery requests that were contained in the January 15, 2008 and January 21, 2008 letters.[29]

Plaintiff's counsel deposed Defendant Monson on February 8, 2008.[30] During the deposition, Monson identified additional information that had not yet been disclosed to Plaintiff including "the most sensitive trade secrets," diagrams, formulas, motherboard for the cards, a prototype of the card, and several written assignments.[31] In a letter from Plaintiff's counsel to Defendants' counsel, dated March 7, 2008, Plaintiff's counsel requested production of the items mentioned by Monson in his deposition and a response to Plaintiff's four previous letters requesting discovery of the items referenced in Riffo's deposition.[32]

On March 10, 2008, Defendants' counsel sent a letter to Plaintiff's counsel stating that Defendants decline to produce any writings or physical items relating to the technology because they are highly confidential trade secrets.[33] The letter further alleges misconduct on the part of Plaintiff and Plaintiff's family, asserting that Plaintiff is trying to uncover the technology without having to pay for it and is in "no position to demand performance" because of his "obvious

---

[27] *Id.*

[28] *Id. See* Stipulated Protective Order, docket no. 36, filed July 31, 2007; Defendants' Responses to Plaintiff's First Set of Requests for Production of Documents attached as Exhibit F to Price Aff.

[29] February 4, 2008 Letter from Plaintiff's Counsel to Defendants' Counsel attached as Exhibit J to Price Aff.; February 25, 2008 Letter from Plaintiff's Counsel to Defendants' Counsel attached as Exhibit K to Price Aff.

[30] Price Aff. ¶ 16.

[31] Monson Dep. 129:4, 194:23-24, 251:14-15 (Feb. 8, 2008) attached as Exhibit Q to Price Aff.; *see also* March 7, 2008 Letter from Plaintiff's Counsel to Defendant's Counsel attached as Exhibit L to Price Aff.

[32] *Id.*

[33] March 10, 2008 Letter from Defendants' Counsel to Plaintiff's Counsel attached as Exhibit M to Price Aff.

breach of contract."[34] Plaintiff's counsel responded in disagreement to Defendants' allegations of bad faith on the part of Plaintiff in a letter dated March 17, 2008, and reiterated Plaintiff's request for production of the items mentioned in Riffo's and Monson's depositions.[35]

### Current Motions

On March 20, 2008, Plaintiff filed his Motion to Compel Discovery with an accompanying memorandum. In addition, Plaintiff submitted Counsel's Statement of Reasonable Effort to Reach Agreement on Discovery Issues which summarizes Plaintiff's repeated letters and emails to Defendants' counsel requesting discovery.[36]

Defendants filed a Memorandum in Opposition to Plaintiff's Motion to Compel Discovery and In Support of Motion for Protective Order on March 28, 2008.[37] In this Memorandum, Defendants emphasize the confidential nature of the technology sought by Plaintiff and requested the court to enter a new protective order.[38] Defendants filed a motion for a new protective order on May 13, 2008.[39]

After briefing on this motion, Defendants filed a Motion for Leave to File Surreply Memorandum with supplemental Memorandum in Opposition to Plaintiff's Motion to Compel Discovery on April 15, 2008.[40] In this Motion, Defendants state that they have a buyer interested in purchasing their technology contingent upon the technology remaining completely

---

[34] *Id.*
[35] March 17, 2008 Letter from Plaintiff's Counsel to Defendants' Counsel attached as Exhibit N to Price Aff.
[36] Plaintiff's Counsel's Statement of Reasonable Effort to Reach Agreement on Discovery Issues,, docket no. 86, filed March 20, 2008.
[37] Memorandum in Opposition to Plaintiff's Motion to Compel Discovery And In Support of Motion for Protective Order, docket no. 89, filed March 28, 2008.
[38] *Id.* Plaintiff submitted a Reply to Response Motion to Plaintiff's Motion to Compel Discovery, docket no. 91, filed April 11, 2008.
[39] Defendants' Motion for Protective Order, docket no. 106, filed May 13, 2008.
[40] Defendants' Motion for Leave to File Surreply Memorandum; Supplemental Memorandum in Opposition to Plaintiff's Motion to Compel Discovery, docket no. 94, filed April 15, 2008.

confidential from potential competitors, including Plaintiff.[41] Plaintiff responded that the need for production of the technology is critical in the litigation, and that the motion to file sur-reply should therefore be denied.[42]   Because the Court wants to consider Defendants' arguments completely, the motion to file sur-reply memorandum will be granted.

## DISCUSSION

### Establishment of a Trade Secret

Defendants argue that the requested diagrams, formulas, motherboard for the cards, prototype of the card, and additional documents pertaining to Defendants' technology are trade secrets and that disclosure would cause irreparable harm.[43] Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, a party seeking to resist discovery must "first establish that the information sought is a trade secret and then demonstrate that its disclosure might be harmful."[44] Once a party has satisfied these requirements, the burden shifts to the party seeking discovery to demonstrate that the trade secrets requested in discovery are both relevant and necessary to the case.[45]

The Tenth Circuit has defined a trade secret as "any formula, patent, device, plan or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know it."[46] According to Defendants, the technology sought by Plaintiffs "relates to certain techniques and formulae which are utilized to store human biometric information in credit cards for security, medical and retail purposes" that

---

[41] *Id.*
[42] Plaintiff's Memorandum in Opposition to Motion for Leave to File Surreply Memorandum, docket no. 97, filed April 17, 2008.
[43] Memorandum in Opposition to Plaintiff's Motion to Compel Discovery at 2, docket no. 89, filed March 28, 2008.
[44] *Centurion Industries v. Warren Steurer and Associates,* 665 F.2d 323, 325 (10th Cir. 1981); *see also Gohler v. Wood,* 162 F.R.D. 691, 693 (D. Utah 1995); Fed. R. Civ. P. 26(c)(1).
[45] *Id.*
[46] *Telex Corp. v. International Business Machines Corp.,* 510 F.2d 894, 928 (10th Cir. 1975) *citing Restatement of Torts* § 757(b) (1939).

8

have taken Riffo "years of his life and millions of dollars in personal funds" to research and develop.[47] Defendants further assert that the unique nature of their technology gives them an advantage to competitors in the industry.[48] Therefore, Defendants' technology qualifies as a trade secret.

Before the burden shifts to Plaintiff to establish that disclosure of the trade secret is both necessary and relevant, Defendants are also required to demonstrate that disclosure of their trade secret would be harmful.[49] In their Memorandum in Opposition to the requested discovery, Defendants state that they will be "irreparably harmed" if they have to disclose their specialized "technique" that employs algorithms designed by Riffo to potential industry competitors.[50] Defendants have further brought to the Court's attention that there may be potential purchasers of Defendants' technology that will be unwilling to do so if Defendants are required to disclose materials to the Plaintiff. In part this is because Plaintiff's late father, James L. Sorenson, acquired an interest in a competing company known as MediConnect.[51] This information sufficiently establishes that the *unprotected* disclosure of Defendants' technology, which constitutes a trade secret, would likely be harmful. Therefore, the burden now shifts to the Plaintiff to show that the disclosure of the technology and related materials are both necessary and relevant.[52]

---

[47] Memorandum in Opposition to Plaintiff's Motion to Compel Discovery at 2.
[48] *Id.* at 2-3.
[49] *Centurion Industries*, 665 F.2d at 325.
[50] Memorandum in Opposition to Plaintiff's Motion to Compel Discovery at 2.
[51] *Id. See also* Defendants' Motion for Leave to File Surreply Memorandum at 1.
[52] *Centurion Industries*, 665 F.2d at 325; *see also Gohler v. Wood*, 162 F.R.D. 691, 694 (D. Utah 1995).

**Information Sought Must be Relevant and Necessary**

"There is no absolute privilege for trade secrets and similar confidential information."[53] Once trade secrets are found to be both relevant and necessary to the case, the court has discretion to require their production under a protective order.[54] The Tenth Circuit Court of Appeals has held that "relevancy is construed more broadly during discovery than at trial."[55] Federal Rules of Civil Procedure 26(b)(1) further adds, "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonable calculated to lead to the discovery of admissible evidence."[56]

Plaintiff asserts that the items mentioned in Riffo's and Monson's depositions and in the Executive Summary are relevant to his claims against Defendants.[57] Specifically, Plaintiff asserts that "the material representations Defendants made to Plaintiff and the omissions to induce him to transfer $2.5 million were false," and that production of the requested items will demonstrate whether or not such material representations were indeed false.[58] Sorenson was told by Defendants in both meetings and in the Executive Summary that years of research and over $50 million had already been spent developing the unique DNA technology, and Defendants further represented that they had the finished product ready for mass production.[59] Therefore, all

---

[53] *Federal Open Market Committee of the Federal Reserve System v. Merrill*, 443 U.S. 340, 362 (1979) *quoting* 8 Fed. Prac. & Proc. Civ.2d § 2043 (further stating that "the protection afforded is that if the information sought is shown to be relevant and necessary, proper safeguards will attend disclosure. It is for the party resisting discovery to establish, in the first instance, that the information sought is within the provision of the rule.").
[54] *Gohler v. Wood*, 162 F.R.D. 691 (D. Utah 1995); *See Also Centurion*, 665 F.2d at 326; *Master Palletizer Sys. v. T.S. Ragsdale Co.*, 123 F.R.D. 351, 353 (D. Colo. 1988).
[55] *Centurion*, 665 F.2d at 326.
[56] Fed.R.Civ.P. 26(b)(1). The Tenth Circuit has held that the "good cause" requirement is satisfied by proving "relevance and need" of the evidence in *Centurion*, 665 F.2d at 325.
[57] Plaintiff's Memorandum in Support of Plaintiff's Motion to Compel Discovery at 7, docket no. 84, filed March 20, 2008; *see also* Executive Summary attached as Exhibit B to Price Aff..
[58] *Id.*
[59] *Id. See also* Riffo Dep. 212:8-9; Monson Dep. 194:24-25.

writings, research, physical materials, and other items relating to Defendants' purported technology are critically relevant to the claims of this case.

In addition to establishing relevancy, Plaintiff must show that the discovery of information regarding Defendants' trade secret is necessary to his case.[60] In determining the necessity prong, Courts consider whether or not production of the information will have a "direct bearing on the outcome of the case."[61] In this case, the court finds that the materials and their nature – or their non-existence – will have a central, almost determinative, bearing on the outcome of the case and are therefore essential.

Plaintiff's claims revolve around whether Defendants' misrepresented their DNA technology to fraudulently induce Plaintiff to invest $2.5 million in Crypto and Glodis.[62] While Defendants maintain that disclosure of the materials relating to the DNA technology is not necessary because Defendants produced "several documents relating peripherally to the technology" and answered questions regarding the technology in their depositions, no physical evidence of the DNA technology has been produced.[63] Furthermore, after reading excerpts from Riffo's deposition, it is not clear whether the DNA technology ever existed or now exists in the condition described in the Executive Summary and business meetings between Sorenson and Riffo prior to the signing of the Business Asset Purchase Agreement.[64] Without these materials, there cannot be sufficient proof establishing the existence of Defendants' purported technology.

Plaintiff asserts that there is a necessity for all items relevant to Defendants' alleged technology to be disclosed in this case because "Plaintiff seeks to demonstrate that material

---

[60] *Centurion Industries,* 665 F.2d at 325; *see also Gohler,* 162 F.R.D. at 693; Fed. R. Civ. P. 26(c)(1).
[61] *Gohler,* 162 F.R.D. at 695.
[62] Complaint at 11-19.
[63] Defendants' Memorandum in Opposition to Motion to Compel Discover and In Support of Motion for Protective Order at 4.
[64] Riffo Dep. 165:8-14, 166:24-25.

11

representations concerning the technology . . . were false and that the technology either never existed as portrayed or had never seriously been developed."[65] Since Plaintiff's claims against Defendants include federal and state securities fraud, negligent misrepresentation, common law fraud, and civil conspiracy, which are claims primarily based on material misrepresentations made by Defendants regarding their purported DNA technology, it is necessary to discover whether or not such technology truly existed, and its characteristics.[66] Therefore, all writings, research, documents, physical objects, and other items relating to Defendants' technology are necessary to this case.

## **Balancing Need with Injury**

Since the Plaintiff has shown that the disclosure of Defendants' trade secret is both relevant and necessary to the case, the Court must balance the need for the information against the potential harm of disclosure. According to the Tenth Circuit Court of Appeals,

> It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweigh the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion. We may only reverse the district court if it has abused its discretion.[67]

In this case, the Court finds that the necessity to disclose all writings, drawings, renditions, physical objects, computer generated information, research papers, agreements, and other materials pertaining to Defendants' purported technology outweighs the harm of the significantly restricted disclosure under a protective order.

Plaintiff's claims revolve around the existence of Defendants' purported technology.[68] There is currently a lack of sufficient evidence to prove that Defendants' DNA technology exists

---

[65] Plaintiff's Memorandum in Support of Motion to Compel Discovery at 7.
[66] Complaint at 11-19.
[67] *Centurion,* 665 F.2d at 326.
[68] Complaint at 11-19.

in the form represented to Plaintiff prior to Plaintiff's investment of $2.5 million in Crypto and Glodis. Defendants argue that they should not have to produce the technology because they have "already furnished evidence of the technology, without actually producing confidential items."[69] Defendants' examples of disclosures that prove the existence of their DNA technology include documents that relate "peripherally" to the technology (which were not specifically identified in Defendants' memorandum and are therefore unknown to the court) and the depositions of Defendants Riffo and Monson in which they answered questions relating to the purported technology.[70] The attached excerpts from Riffo's deposition, however, seem to suggest that the motherboard for the CryptoDNA card is developed, while the card was only 40% complete after "all night" work by Riffo the night preceding his deposition.[71] Riffo further stated that it has taken him 15-20 years to develop the card, which will come into being "when I [Riffo] have $100 million for put [sic] together the production."[72]

   Defendants also argue that since Plaintiff executed a contract in which he "expressly acknowledged having received satisfactory information concerning the technology" and expressed no concerns about the technology or lack therefore in his resignation letter to Defendants, Plaintiff's claims that the technology does not exist was "manufactured for this litigation."[73] However, this argument does not provide actual proof that the DNA technology exists, and it is irrelevant to determining if Defendants misrepresented their technology to Plaintiff.

---

[69] Defendants' Memorandum in Opposition to Motion to Compel Discover and In Support of Motion for Protective Order at 4.
[70] *Id.*
[71] Riffo Dep. 168:14, 169:6.
[72] *Id.* at 166:3.
[73] Defendants' Memorandum in Opposition to Motion to Compel Discover and In Support of Motion for Protective Order at 4.

Defendants further allege that the Executive Summary was drafted as a "future representation" of what Cypto and Glodis would have once "additional investment monies had been received and additional development had been completed."[74] The parties dispute whether the Executive Summary was a prospective or current summary of the companies' assets and developments. A plain reading of the Executive Summary makes it appear to be a current statement of the companies' activities with a projection of growth if further investments are made in the technology.[75] It is also noteworthy that Defendants made no initial objections to Plaintiff's discovery requests, claimed that they had produced all requested materials despite evidence pointing to the contrary in Riffo's and Monson's depositions, and wrote that they **would make available** "[c]ertain objects, such as prototypes and card readers" for inspection at the offices of Defendants' counsel.[76]

Therefore, due to the lack of clarity concerning the existence and condition of Defendants' purported DNA technology, which is a central issue to Plaintiff's case, the Court finds that the need for Defendants to produce all writings, drawings, renditions, physical objects, computer generated information, research papers, agreements, and other materials pertaining to Defendants' purported technology under a Court-amended protective order outweighs the potential harm from disclosure.

---

[74] *Id.*
[75] *Id* at 5.
[76] Plaintiff's Memorandum in Support of Motion to Compel Discovery at v.

14

# ORDER

## Amendments to Stipulated Protective Order

In order that these essential materials may be part of discovery while protecting against improper disclosure or use of sensitive information,

IT IS HEREBY ORDERED that the Stipulated Protective Order[77] is amended to add the following paragraph 6A, which may be amended by agreement of the parties or further order of the Court:

> 6A.   In connection with discovery proceedings in this action and pursuant to the Stipulated Protective Order, any party and any non party from whom discovery is sought may designate (1) sensitive technical information, including current research, development, algorithms and manufacturing information, (2) sensitive business information, including highly sensitive financial or marketing information and the identity of suppliers, distributors and potential or actual customers, (3) competitive technical information, including technical analyses or comparisons of competitor's products, (4) competitive business information, including financial or marketing analyses or comparisons of competitor's products and strategic product planning, or (5) other similar sensitive confidential information as <u>"CONFIDENTIAL INFORMATION - ATTORNEYS' EYES ONLY."</u>  The processes of the Stipulated Protective Order shall apply to this information where consistent with these provisions.
> 
> Confidential Information which has been designated "CONFIDENTIAL ATTORNEYS' EYES ONLY" shall be disclosed only to:
> 
> (1)   Outside legal counsel and their employees or contractors (such as photocopy services) who are assisting them and bound by obligations of confidentiality; and
> 
> (2)   Experts who have been retained by the party or its attorneys for this action, provided that each such expert <u>has first been identified in accordance with these provisions</u> and executes a written Agreement and Undertaking as provided in the Stipulated Protective Order.
> 
> If any party desires to give, show, make available or communicate documents or information designated as "CONFIDENTIAL ATTORNEYS' EYES ONLY" to any expert, it must first identify in writing the expert to whom it intends to give or disclose such documents or information to the attorneys for the other parties, who shall have ten (10) days from receipt of such notice to object to disclosure to any of the experts so identified, setting forth the reason for the objection.  Such identification of the expert shall include a specific written description of the materials proposed to be provided., and at least: (1) the full name and professional address and/or affiliation of the proposed expert; (2) a

---

[77] Stipulated Protective Order, docket no. 36, filed July 31, 2007.

current curriculum vitae identifying, at least, all other present employments or consultancies of the expert; (3) an identification of all prior employments or consultancies during the past 4 years; and (4) an identification of any previous or current relationships with any party to the lawsuit.

The parties shall attempt to resolve any objections informally. If the objections cannot be resolved after an in person meeting between counsel, the party seeking to disclose the "CONFIDENTIAL ATTORNEYS' EYES ONLY" information to the expert may move for an Order of Court allowing the disclosure. In the event objections are made and not resolved informally, disclosure of "CONFIDENTIAL ATTORNEYS' EYES ONLY" documents and information to the expert shall not be made except by Order of the Court. The party objecting to the disclosure shall bear the burden of proving that the disclosure is inappropriate.

IT IS FURTHER ORDERED that Plaintiff's Motion to Compel Discovery[78] is GRANTED; Defendants' Motion for Protective Order[79] is GRANTED IN PART; and Defendants' Motion for Leave to File Surreply Memorandum[80] is GRANTED. No expenses are awarded to either party on these motions.

DATED this 30th of July 2008.

BY THE COURT:

_____
David Nuffer
United States Magistrate Judge

---

[78] Docket no. 83.
[79] Docket no. 106.
[80] Docket no. 93.