IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JOSEPH T. SORENSON,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE ARTURO RIFFO, et al.,<br><br>    Defendants. | MEMORANDUM DECISION<br>& ORDER<br><br>Civil Case No. 2:06CV749DAK |

  This matter is before the court on several motions: (1) Plaintiff's Renewed Motion in Limine to Exclude Defendants From Offering Experts David L. Faust and Del Jensen as Witnesses and to Exclude their Reports [Docket No. 292]; (2) Plaintiff's Motion for Constructive Trust [Docket No. 296]; (3) Defendants' Motion to Disqualify Counsel [Docket No. 329]; (4) Defendants' Motion for Sanctions [Docket No. 333]; (5) Defendants' Motion to Continue Trial [Docket No. 340]; and Defendants' Motion to Reinstate Original Counterclaim [Docket No. 342]. All of these motions are either fully briefed or the time for filing a reply has passed. The court concludes that a hearing would not significantly aid in its determination of these motions. The court, therefore, has carefully considered the parties' arguments as well as the law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

1

# DISCUSSION

## I. Plaintiff's Motion in Limine

Plaintiff's motion in limine seeks to preclude Defendants from offering the expert testimony of David L. Faust and Del Jensen and their joint report. Plaintiff's motion is based on Rule 702 of the Federal Rules of Evidence. Defendants do not appear to oppose it on those grounds. While Defendants filed a memorandum in opposition, they do not appear to oppose the substance of the motion. Defendants state that Faust presented a series of communications that are defamatory and derogatory toward Defendants and they terminated his services as an expert in this case. But the portions of the emails attached to the memorandum in opposition only mention Faust once and state that he met with the FBI. There is nothing inherently wrong with meeting with the FBI. The court, however, agrees that Defendants may determine whether to use the services of any given expert.

In any event, the motion appears to be moot as a result of Mr. Faust's termination. Because of the termination, Defendants ask for additional time to obtain a report from a new expert witness. The court grants Defendants one month from the date of this Order to obtain a new expert.

## II. Plaintiff's Motion for Constructive Trust

Plaintiff filed a motion for imposition of a constructive trust as a matter of equity. Utah law recognizes the use of constructive trusts when (1) specific property can be traced to the wrongful behavior, (2) there is unjust enrichment, and (3) there is a wrongful act. *Wilcox v. Anchor Wate Co.*, 2007 UT 39 ¶ 34 (2007). Utah law recognizes Section 160 of the Restatement of Restitution which "provides that a constructive trust may arise 'where a person holding title to

property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Parks v. Zions First Nat'l Bank*, 673 P.2d 590, 599 (Utah 1983).

In this case, under a Business Asset Purchase Agreement, Plaintiff wire transferred $2.5 million to a savings account of Defendant Dippardo Financial & Guaranty Group, Inc. at JP Morgan Chase Bank in Salt Lake City, Utah. Plaintiff made this transfer in connection with an investment opportunity he entered into with Defendants, which Plaintiff alleges in this case to be a fraudulent scheme. Defendant Alan Monson gave Plaintiff the instructions for making the transfer to the Dippardo account. After the money was transferred to the Dippardo Savings Account it was transferred to a Dippardo operating account at the same bank. Three weeks later, on November 8, 2005, a check was drawn on that operating account for $296,800.00, payable to U.S. Bank. The check was used to pay for the redemption of a home that had been sold at foreclosure. The home is located at 1065 Foothill Drive in Salt Lake City, Utah. Prior to the foreclosure, the home was in the name of a purported trust with Defendant Arturo Riffo's daughter as trustee. Defendant Riffo was president of Dippardo and approved of the payment.

Plaintiff argues that his $2.5 million wire transfer made it possible for Dippardo to pay the money to US Bank so that the redemption could take place on the 1065 Foothill Drive home. Plaintiff contends that he is equitably entitled to a constructive trust in at least the amount of $296,800.00, plus interest, as to any interest Dippardo has in the 1065 Foothill Drive home.

Plaintiff states that the money Dippardo paid to US Bank on the 1065 Foothill Drive home can be traced to the money he was fraudulently induced to invest. Furthermore, Plaintiff asserts that Defendant Riffo has been unjustly enriched because, as president of Dippardo, he

knew that the money in the Dippardo account had come from Plaintiff and he knowingly used the funds to redeem the property at 1065 Foothill Drive, which was totally unrelated to the proposed investment opportunity that had been presented to Plaintiff. In these circumstances, Plaintiff contends that it would be inequitable for Dippardo to keep the benefits of the fruits of the money or to alienate any interest it has in the 1065 Foothill Drive property before this litigation is concluded. Finally, Plaintiff argues that not only is wrongful activity relative to the $2.5 million transfer alleged in the complaint, but the court's order dismissing Dippardo's counterclaim recognized that Dippardo was not a party to the Business Asset Purchase Agreement wherein there was purportedly to be a sale of assets and corporate shares to which the $2.5 million was related. The court has also previously ruled that Plaintiff may introduce evidence about Defendants' misconduct for purposes of impeaching Defendants' credibility.

Defendants acknowledge that Dippardo paid the money to U.S. Bank to redeem the property. But Defendants assert that the funds used by Dippardo to pay for the Foothill property did not come from $2.5 million Plaintiff paid to Dippardo in connection with the Business Asset Purchase Agreement. Defendants also state that neither Arturo Riffo nor Dippardo has any interest in the Foothill property or the AMD Trust who owns the property.

Defendants contend that this court is without jurisdiction to make any rulings or order concerning the 1065 Foothill Drive property because neither the property nor its owner is before the court in this case as a party and there is no evidence to demonstrate that the property is in any way connected to the case. Plaintiff, however, contends that he does not seek a constructive trust on the property, but only on whatever interest Dippardo has in the property. Plaintiff does not presently seek a determination by the court as to what Dippardo's interest in the property may be.

Furthermore, factually, the bank records of the Dippardo savings account indicate that when Plaintiff transferred the $2.5 million, the account balance was zero. Thereafter, on November 21, 2005, $296,800 was transferred from the savings account to the operating account, and, that same day, the check to U.S. Bank was paid in the amount of $296,800 for the redemption of the Foothill Drive property.

The court concludes that the funds used to redeem the Foothill Drive property are fairly traceable to Plaintiff. The court also finds that, based on the evidence presented to the court, Dippardo likely has some interest in the 1065 Foothill Drive property. Defendant Riffo's testimony on the subject is contradictory and unclear. However, the court is not being asked to determine the precise interest at the present time. For purposes of this motion, Plaintiff seeks only a constructive trust on Dippardo's interest, whatever that may be. The court concludes that Plaintiff is entitled to the requested constructive trust during the pendency of this litigation. Accordingly, Plaintiff's motion for constructive trust is granted.

### III. Defendants' Motion to Disqualify Counsel and Motion for Sanctions

The court next considers Defendants' Motion to Disqualify Attorneys for Plaintiff and Defendants' related Motion for Sanctions. Defendants base much of the motions on facts related to a separate case that does not relate to Plaintiff or his attorneys in this case. There is a reference in one email exhibit that Plaintiff's counsel met with the individuals involved in the other lawsuit. There is nothing improper about such a meeting. And there is no evidence to support the allegations that Plaintiff's counsel are engaged in a conspiracy to extort or coerce Defendant Riffo into a settlement. In addition, Plaintiff's counsel state that they have never met with Defendants' former expert witness, Mr. Faust, outside of Defendants' counsel's presence

and there is no evidence that a separate meeting between Plaintiff's counsel and Faust ever occurred. Defendant Monson's letter to Faust merely states that Defendants are in agreement with Plaintiff's motion in limine and discusses Defendants' conflict with Faust. Defendants' counsel repeatedly twists the contents of letters and emails to cast aspersions unsupported by the documents.

The court finds that there is no evidence of improper conduct on the part of Plaintiff's counsel. Accordingly, the court finds no basis for disqualifying Plaintiff's counsel or imposing sanctions. The court, therefore, denies Defendants' Motion to Disqualify Attorneys for Plaintiff and Defendants' related Motion for Sanctions.

### IV. Defendants' Motion to Continue Trial

Defendants seek to continue the trial presently set to begin February 16, 2010 until sometime after July 1, 2010. Defendants assert that they need additional time for recently hired counsel to review the documents and pleadings in this case, time to obtain an expert witness, time for pretrial discovery and disclosure, and time for the deposition of recently disclosed witnesses.

Defendants recently hired lead counsel, Irval Mortensen, has decided to retire and accept a full-time mission assignment for The Church of Jesus Christ of Latter-day Saints. As a result, Defendants' retained local counsel will need to take a major role in the defense of the case. While Plaintiff's state that Mortensen did not indicate his decision to retire at the November 30, 2009 scheduling conference and such a decision is voluntary, the court does not believe it can issue a mandate requiring that Mortensen stay on the case. The court agrees with Defendants that changing from local counsel to lead counsel is a significant adjustment for Mr. Crayk that will

require some additional time.  This change in counsel's role is a valid basis for requesting a continuance of the current trial date.

With respect to expert testimony, the court has already granted Defendants one month to retain a new expert.  This will require additional time prior to trial to obtain an expert report and allow for the deposition of the newly retained expert.   The court, therefore, agrees that this is a basis for continuing the trial.

The court acknowledges that this case has been close to trial several times and should be resolved as soon as possible.  The court is also frustrated by Defendants decision to file a string of motions with little support or merit in lieu of preparing for trial.  These motions do not provide a basis for continuing the trial.  The court admonishes counsel for Defendants from filing any further such motions and instructs them to diligently prepare this case for trial.  The court, however, grants Defendants' request for a continuance of the trial date but finds no reason for the trial to be past July 1, 2010.  The 7-day trial for this matter shall begin May 17, 2010.

### V. Defendants' Motion to Reinstate Original Counterclaim

Defendants argue that reinstatement and amendment of Defendants' original counterclaim is warranted based on the conduct of Plaintiff and his attorneys.  Again, the court finds no basis in the evidence supporting Defendants' claims of misconduct by Plaintiff or his attorneys.  This court has also reviewed Judge Waddoup's order dismissing Defendants' counterclaim as a sanction and finds it well-reasoned and supported by the evidence.  The court, therefore, finds no basis for allowing a reinstatement of Defendants' original counterclaim.  Accordingly, Defendants' motion is denied.

**CONCLUSION**

Based on the above reasoning, (1) Plaintiff's Renewed Motion in Limine to Exclude Defendants From Offering Experts David L. Faust and Del Jensen as Witnesses and to Exclude their Reports [Docket No. 292] is MOOT; (2) Plaintiff's Motion for Constructive Trust [Docket No. 296] is GRANTED; (3) Defendants' Motion to Disqualify Counsel [Docket No. 329] is DENIED; (4) Defendants' Motion for Sanctions [Docket No. 333] is DENIED; (5) Defendants' Motion to Continue Trial [Docket No. 340] is GRANTED; and Defendants' Motion to Reinstate Original Counterclaim [Docket No. 342] is DENIED.

As a result of the court's granting of Defendants' Motion to Continue Trial Date, the trial date of February 16, 2010 is VACATED and the 7-day jury trial is reset to begin May 17, 2010. Defendants shall retain a new expert witness within one month of the date of this Order.

DATED this 25th day of January, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge